We have six cases on the calendar this morning, two from the PTAB, two from district courts, two from the MSPB, the latter being submitted on the briefs and not to be argued. Our first case is B.E. Technology v. Twitter and Google, 2023-11-26, 27-28, 30-31, and 32. Mr. Neruzzi, before you speak, and please don't let the clock start yet, we just got a 28-J letter from you. Calling to our attention an action of a district court six months ago, which you obviously knew of then. If this is important to us, we should have gotten it quite a while ago. I mean, we spend a lot of time preparing these cases and getting something that you had six months ago, sending it to us two days ago, addressed to the clerk of court who hasn't been the clerk of court here for quite some time. That suggests a kind of sloppiness maybe or inattentiveness. Do you have any explanation? Your Honor, on the clerk of court issue, I apologize. On the timing, I appeared as counsel personally myself within the past month as new counsel in the case. As to why prior counsel did not submit the district court's claim construction decision, I don't have a response to that. I will say, though, that Rule 28-J is agnostic as to whether the supplemental authority benefits or detracts from a party's argument. It only matters that it is relevant new authority, and the decision also was not submitted by counsel for appellees. In any event, it's your recent counsel. You're off the hook. It wasn't your responsibility. All right, let us proceed. Thank you, Your Honor, and may it please the court. Your Honor, with respect to the unique identifier issue in Claim 1, the board made a key error of claim interpretation and then proceeded to make an error, an erroneous finding of unpatentability based on Brio that rested on its erroneous claim understanding. The board conflated the notions of identification of a user with the notion of identification of the computer, and Claim 1 expressly requires computer identification. So the claim language recites the unique identifier identifying the computer. Now, what the board did is it said there is an embodiment in the specification in which user identification can also serve as computer identification, and then it proceeded to say effectively that therefore user identification always suffices to serve as computer identification. What does it matter if all of those devices all point to a specific computer, an identified computer? Judge Raynard, I want to make sure I addressed your question correctly. Are you referring to what is taught in the Guyot reference? I'm sorry, what? Are you referring to what is taught in the Guyot reference? Yes. Yes, and are you saying that in Guyot the . . . No, I understand your argument to be that you can have many different types of devices or apparatuses that each have a specific user ID that don't point to a computer ID, right? No, that is not my argument. All right. Yes, Your Honor, thank you, and I think this will hopefully elucidate the distinction because user ID or subscriber data as the term is referred to in Guyot is something like your Gmail login ID. It is your personal identifier that gets you into your account, and you can use that in Guyot and in many instances of computer systems across any different computer so long as you have access to the relevant software, whether it be web-based or . . . Okay, I'm sorry I didn't cut you off. Maybe I'm misunderstanding. Are you arguing that there's a technical reason in the record that a unique identifier can't identify both the user and the computer? No, that is not what I'm arguing, Your Honor. Okay, so technically they could. You're just arguing that the construction that allowed for that in this case is an error? No, that's not quite what I'm arguing, Your Honor. Okay. Okay, so thank you, and I hope to make this issue very clear. The claim requires computer identification. Computer identification is not one and the same as user identification, and that goes to Judge Reyna's question. User identification is the person. Computer identification is the device. The claim requires computer identification through a unique identifier. Now, it is possible, and the Board was correct in finding, that in some instances someone's user ID could be designed by the system in a way that it not only identifies that user as a person but also the device that they are coming from, right? But that is not necessarily always the case. But does that matter? I mean, maybe I'm misunderstanding the arguments, but why would they have to show that it is always the case? If it's sometimes the case, don't they prevail and don't you lose? I don't get what the relevance of always is. Because in Guyot, it is never the case that the user ID or the subscriber data actually identifies the computer. What happens in Guyot is that there is a unique proprietary identifier that's the computer identifier in Guyot, and that tells the server that a copy of the client application has been installed on a given computer. However, that unique proprietary identifier is not used to identify the computer when a user logs in and interacts with the server. The user ID is associated. It may not have been designed for that purpose, but it does achieve that effect, doesn't it? No, Your Honor. It does not. What happens in Guyot is that there is a database association that says, I'm going to just make up your user ID for me, Neruzzi123. And in the Guyot system, my user ID, Neruzzi123, could be associated with my computer, NeruzziPC. And there would be a record that this user has used this computer in the past. And this computer has a copy of the client software application that Guyot teaches. However, what is missing in Guyot and what the claims require is that when I am logged in as Neruzzi123, Guyot has no idea which computer I'm actually coming from. It doesn't know the computer that is interacting with its server, whether it is that NeruzziPC that's associated from a past instance with my user ID, or whether I'm at the library here at the Federal Circuit, or whether I'm at the Kinko's down the street. It doesn't know that. And Claim 1 requires this specific identification in the language. So there's separate claim language that talks about an association, and the board focused on that association aspect, but the board ignored the import of the language that requires actual identification of the computer. And instead, what it said was that in our specification of the 440 patent, there is a teaching where user ID is specific enough that it also identifies the computer that the user is coming from. That's the point I was making with you earlier. That's exactly the point I was making. Tell me why the specification is incorrect. What's wrong there? No, it is not incorrect. It's just a particular embodiment that is not replicated in Guyot. So the specification teaches two embodiments on this point. One is the simple embodiment that we would all imagine where you have a user ID that says who the user is, and you have a computer ID that says what the computer is, and that's the application ID. It's an ID that's associated with a copy of the application. And the board excluded that embodiment from the scope of the claims, which was clearly erroneous. Then there's another embodiment in the specification where it says the user ID can serve both purposes. It can tell you who the user is, and it can tell you who the computer is, which computer it is. And, for example, in my prior analogy, we could say I have a user ID, Nehruzi123, and I come from my computer, NehruziPC. But when both of these items of information go to the server, for instance, and the server appends all that together as Nehruzi123-PC, and now this one identifier, this one unique identifier, contains both items of information. The specification of our patent says, sure, you can do it that way, too. But GUIO doesn't have that. GUIO doesn't have either of the two embodiments that the specification teaches. I'm not clear about that. Can you look at – I thought the board's decision finds otherwise about GUIO, pages 52 to 54. Sure. Am I wrong about that? So am I misreading what the board found, or are you just disagreeing with the board's findings? I am disagreeing with the board's findings in that they do not focus on and do not meet the relevant claim language. So in page 52, we can see that it says at the bottom, we have already discussed above that GUIO subscriber and subscriber system are associated, right? So everything you will see throughout the board's decision is about this association. But the problem reveals itself when we look at appendix 56, for instance. The board recognizes an argument that we made near the top of page 56 that the computer and the subscriber are separate entities under the 440 patent. It recognizes that we made this point, but then it rejects that, and it says because the 440 specification discloses, among other embodiments, that the user ID identifies the user, dot, dot, dot, and the computer, right? And that's one embodiment. And then from there, the board says in the next sentence, the claim language and the specification do not support the contention that the user ID and the computer must each be separately identifiable. Well, that's incorrect. They each do need to be distinctly identifiable. It can be done by a single identifier in some instances, but that doesn't mean that just because GUIO has a user ID that it serves to identify the computer. So if you – I'm trying to just sort out my mind whether you're disagreeing with the construction that the board had or whether you're disagreeing with the application of its construction in terms of what the reference taught. In your first dialogue with me, it seemed like you agreed with the construction. You just thought the prior art didn't meet that construction, and now it seems like you're saying both. I'd like to clarify that.  So the board made errors at both levels, and its error in terms of the construction understanding led to its error in terms of the application of the prior art to the claims, and this is how those two errors unfolded. With respect to the understanding of the claim, the board looked to the language unique identifier throughout the claim, and it also looked to the teachings around identifiers in the specification, and it saw that in an embodiment, the unique identifier could be a user ID, and it would meet the requirements of both identifying the user and the computer. Then it went on to say – and this is a key error we haven't talked about yet. Wait. Do you disagree with that or agree with that first point? That is one embodiment that is in the specification, and it is correct that that is an embodiment, and it would meet the claims because it does both jobs, and namely the key job of identifying the computer. Right? So an embodiment in which – So it meets both. In that embodiment. You agree. But you would have to – Well, can you answer my question? I mean, okay. Sure. But that's in the embodiment, so do you agree that that's a correct claim construction by the board? That part of it is not a claim construction. The claim construction problem I was going to address has not come up yet. Okay. So the board goes on to say that the language of the claim says selecting an advertisement to be displayed on the computer, the selection based at least on information associated with a unique identifier identifying the computer, and it says – well, it sort of stops reading at based at least on information associated with a unique identifier, and it says the specification only teaches using the user ID to select an ad. And even though the specification teaches a separate thing called an application ID that identifies the computer, that's not used to select an ad. Therefore, computer ID is not part of this claim. That's what the board said, and that's wrong because the claim language says the selection based at least on information associated with the unique identifier. User ID is associated with the application ID in the specification. Wait. Where did the board say the computer identifier is not in this claim? Yes. So you can look at, for example, Google's brief at 39. I'd like to look at the board opinion. Sure. Appendix 25. Okay. Appendix 62. Appendix 60 to 61. And you will see if you look at Google's red brief at 39 that they agree to the same thing, that that is what the board found. And so because the board thought that the concept of a computer identifier is not even within the scope of Claim 1, and that only user ID can meet the claim, which is contrary to the specification's teachings, the board then did not require Buyo to have any teaching that actually expressly identifies what computer is coming to the server. Counselor, you're into your rebuttal time. Yes, Your Honor. I assume you want to save it. I do. And I know I have not yet addressed the cross-appellant's argument about real time. I'm happy to address that as the court would like. Thank you. We'll hear from Mr. Cully. Thank you, Your Honor. Good morning, Your Honors. May it please the court. There is nothing in the specification or the claims of BP's patents that cast any doubt on the board's construction that a user identifier can also perform the functional requirements associated with the unique identifier recited in the claim. In other words, being associated with a computer and identifying the computer. There was no exclusionary language in the claim to prevent that the first time this court looked at this issue, and there's no more information to claim now. And for that reason alone, this court should affirm the board's claim construction. And your view is that the prior art, whose name I can't pronounce, Buyo, meets that? Yes, Your Honor, absolutely. So going on from the claim construction. So the claim construction dispute was most of what they briefed, and I don't think there's anything in the briefing, and I certainly didn't hear anything today that cast any doubt on how the board viewed the claim. So the next question is whether or not there is substantial evidence in the prior art that it does that. Now, what counsel just pointed this court to was a discussion on the bottom of page 52 of the board's decision. And he read the sentence that begins third. Third, we have already discussed above that Buyo's subscriber and subscriber system are associated. And so counsel just made the argument that the board was fixated on this association, that yes, they're associated. The board kept saying they were associated, but that's not enough for it to be an identification of the computer. But what counsel did not read was the next sentence, which says, Dr. Hugh explains, and we agree, that with respect to the single-user, single-computer scenario, the subscriber's identification information stored in the subscriber data is the user identifier, and that because there is a subscriber system associated with the subscriber, the subscriber identification information is associated with the computer through its association with the subscriber. In other words, in the single-user, single-computer scenario, once that identifier is associated with a computer, it necessarily identifies that computer because there is only one computer, the computer the user is using. Now, what counsel did instead was he pointed the court to page 56, and page 56 is where the board discusses the testimony of their expert, Mr. Zakovich, which the board did not credit. So what he pointed you to was their expert's testimony, and their expert said what their expert said, but our expert said something else. The board weighed the evidence and didn't credit their expert. That's a simple, substantial evidence question, and he can point to his expert all he wants, but that doesn't mean that there wasn't substantial evidence in what our expert said and what was in the reference itself. So the single-user, single-computer embodiment gets to the identification of the computer once that association is made, and even if there wasn't a single-user, single-computer embodiment, the board explained that once a user logs on from a computer, at that point in the claim, there is only a single computer, and that's the computer the user logged on from. Now the last thing I want to say about their appeal is that counsel pointed to the board's discussion of the unique installation identifier, and I believe he referred to page 44 of our red brief where we discussed that. That's not a computer identifier. That's the installation identifier, and the board said, well, that's not enough, because the installation identifier that you discuss in your patent has nothing to do with this targeted advertising, and the board was right about that. And moreover, the thing about the installation identifier is that it also is one step removed from the computer. It just identifies the installation, and through that, apparently, they agree, identifies the computer. That's exactly what happens with a user ID. It identifies the computer because it's associated with the computer from which the user has logged in. Now unless the court has further questions about their main appeal, I'll shift to their cross appeal. Now just as in Claim 1, there's no exclusionary language in Claim 25 to exclude processes that include any amount of consideration of previous user interaction. Well, that's true because it says at least in part, right? It is true. Yeah, but still, but doesn't the prior art reference have to include the part that does what the claim says, the real-time part, right? I mean, just because at least in part covers other things doesn't mean that the prior art reference doesn't also have to cover what this is, the part that does it in real time. Unless I misunderstood the argument. I didn't understand that argument. I understood your claim construction argument, but I didn't understand that argument. So, Your Honor, our argument is that once the Board made that construction, that we believe clearly establishes the Board's understanding that if there's any consideration of past user interaction, that process is beyond the scope of the claim. Once it made that construction, it then went to the prior art and just looked for some sort of use of past user interaction. And once it found it, it said, okay, that's not within the scope of the claim. But does the prior art disclose at least some use of a real-time, at least in part that actually does it, that does the real-time as the Board construed it? That's what I was missing. It seemed like, yes, we know. Did you say that you have a prior art reference that does it, it just doesn't do it all the time? Yes, Your Honor. So both Guyot and Robinson do it. Guyot does it in the embodiment where they place an ad in response to a user action like moving the mouse, and Robinson does it when it decides to put up a resonant ad that resonates with the web page that the user has gone to. But don't they fail because under the Board's construction, real-time doesn't include what you've already downloaded previously? Do these references have something that wasn't downloaded previously? They have a selection that's made in real-time. Yes, Your Honor, and the Board said that. They said that on page 97, the fourth line. It says, when Guyot describes choosing and selecting advertisements, those actions are not performed in connection with reactive targeted advertising in real-time. Rather, Guyot's targeted… I'm sorry, I'm trying to follow you. I'm sorry. So where are you on page 97? I'm on 97. One, two, three, fourth line down. Towards the end, there's a sentence that begins, when Guyot describes choosing and selecting advertisements. And that's referring to the selection that occurs upon user activity. And that's also at the bottom of the previous page where it says… But where do they say that because it does that but it doesn't do it all the time, that's the failure of Gougeout? I couldn't glean that. Okay, so it's not that it doesn't do it all the time. It's that when it does it, the selection is being made from a group of ads that themselves were selected. No, that's what I mean. That's what I understood the problem was. It wasn't that you didn't meet the Board's definition of real-time. You just say that they misconstrued real-time and real-time should include what was previously downloaded. Well, it shouldn't include what was previously downloaded. What it should include is a further selection from among the ads that were previously downloaded, which is exactly how their system works. So the Board looked for this reliance on some amount of prior user interaction. And when it found it, it decided that consistent with its construction, which was wrong, that the reference was outside of the scope of the claim. And the problem with that is that they misunderstood the two tiers of advertising that are described in the patent, and they instead looked at them as two distinct types of advertising. So the way the two tiers work in their system is first the system uses the demographic data to find a bunch of ads that would be targeted to the user. And then those ads are downloaded to the user's computer. Then when the user is using the computer, the system detects some sort of user interaction and then selects from those downloaded ads an ad in response to that user interaction. That second part, the second tier, is where the real-time advertising that's recited in Claim 25 comes in. See, that's what I'm misunderstanding, and I'll let you go after that if you can't explain it. But I thought real-time, under the board's construction, did not include going to ads that were already downloaded, that it had to be a fresh thing, a new thing in real-time. That's what I understood the disagreement was between you and the board, perhaps. So if the only thing that's happening is that an ad is presented without a further selection, just because it was downloaded to the computer, that, the board would say, is simply relying on past user interaction. Yes, okay, yeah, and you're saying that's wrong. We're saying that if there's a future selection, in other words, this group of ads is downloaded to the computer. Okay, they're all based on previous user interaction. Now the question is, does the second tier kick in? Is there a further selection of an ad from that group based on user interaction? The board, although it seemed to understand that Guyot and Robinson taught such an additional tier two action, a further selection, that it didn't matter because the selection was from among the ads that were already targeted. Yes, so if we accept that, then the prior art reference does not teach what's in the claims. If we accept the board's view of that, which it can't include, at least in part, downloaded, stuff that was previously downloaded, then the reference would not read on this, right? If you agree with the board that the claim excludes a third rail, if there's any use of that, yes, I think I'd have to agree with that. And Your Honor, not even BE agrees with that, and I would point the court to page 44 of the yellow brief. In the middle, just above the middle, right after that site that says APPX 30, a bunch of zeros in front of it, it says the board never indicated that a process would not practice claim 25 if it involves first selecting a group of advertisements based on past user interaction, like demographic information, but then subsequently selecting from that group a targeted advertisement in real time. So Judge Prost, I understood your question just now to be, if we agree with the board that what is outside the scope of claim 25 is any process that uses a previous user interaction to first select a subset of ads, would that put the prior art outside the scope of the claim? Not even BE agrees that that is the case. That sentence seems to deal with this two-tier thing, right? And not so much with the question I'm asking. Oh, I'm sorry. You know this case better than me, but that's the way I read what they said on page, whatever page you showed us. 44. What was it? So the two tiers, it's like... Because they talk about the demographic information. Right, and so that's the initial targeting for the first tier. So you take all the ads that you could have, and then you take this demographic information, and you do your first tier targeting. And so you take all those ads and you bunch them together and put them on the computer. And the reason you do that, by the way, is they don't require Internet access. And so once you do that, then there's a further step in tier two, and that further step is a selection from among those ads that's based on current user activity. Can I ask you one quick question?  Because I'm not going to send you behind your time. I don't want to use it. Just one quick question. You're asking for a remand. What would be done on remand as an alternative to reversal? Okay. What would be done on remand is that the board would reconsider both Geo and Robinson with the correct construction. In other words, they wouldn't immediately dismiss those references as beyond the scope of the claim simply because they did their real-time selection from among a group of ads that were previously themselves selected. Okay. Thank you. And I'll reserve the remainder of my time. We will do that, Mr. Kelly. Mr. Muzi. Thank you, Your Honors. I'd like to very briefly touch on a couple points about the unique identifier and then move on to the real-time issue. Regarding the unique identifier point, counsel for cross-appellants pointed to the bottom of page 52. I already addressed this issue. What that sentence talks about is an association between user ID and a past computer download of the application. It doesn't tell GUEO whether the user is using that computer right now. By contrast, if you look at appendix 395, which is our patent, column 29, line 65 to 67, you will see that our patent teaches that every single time the user comes to the server, the computer is also separately identified or distinctly identified is what I mean by separately identified. Not just the user, but also the computer. And GUEO doesn't do that, and the board never found any evidence that GUEO does. With respect to the cross-appeal and real-time, Judge Prost, you're absolutely right that the prior art has to also do the real-time part. And that is really what the board's decision is about. So you have to view the decision in the context of the arguments that were presented. Petitioner said that the claim can be met based entirely on ad selection that is tied to past activity. And the board said, no, you cannot solely meet the claim based on past activity. And that's, for example, at appendix 32, where the board's construction says that past activity cannot be the basis for the ad selection. Now, in GUEO and Robinson, as the board found, the only basis for ad selection is past user activity. There is no real-time component as to the ad selection. GUEO does look to whether the user is active based on its mouse movements or keyboard strokes to decide whether to show it an ad. But the decision and the sort of analysis of whether the user is active doesn't affect ad selection at all. And it's not simply based on the fact that the ads were downloaded before. It's even on the issue of which ad is shown to the user. GUEO does nothing with that decision based on the user's current activity in real time. And neither does Robinson. Robinson is all about these affinity groups and determinations based on an algorithm of what someone will want to see based on what other people like them have wanted to see in the past. Counsel, I think I'm the unique identifier of the time available to you. And that is now none. Thank you, Your Honor. Thank you for your argument. Mr. Kelly has some time on the cross appeal. Thank you, Your Honor. So just to address the cross appeal, the two points about the prior art references, what counsel just discussed was a finding that the board never was able to make because of its own construction. The board's findings about the prior art in Claim 25 were cabined by its construction that as long as it could find past user interaction, the references were outside the scope of the claim. GUEO teaches, and I don't think they can dispute, that an ad is selected when the mouse is moved from among the ads that were already downloaded. And when it comes to Robinson, same thing. An ad is selected when a user goes to a website. Now just quickly about Robinson. The Robinson issue has to do with this issue called resonance. And resonance is an observation by the system that certain ads might be more likely to be clicked on based on the website. So you might go to websites about surfing or skiing, and there might be ads for snow pants or swimsuits. And that decision is made in advance, sure. It decides which types of those ads are resonant. But when the user actually goes to a website about skiing, the reason – and this is my own example. This is not – the reason the system shows an ad for snow pants and not a swimsuit is because the user just went to that website. It selected an ad in real time based on the user's activity. Now the reason why the board said, well, that's still outside the scope of Claim 25, is that the board reasoned that, ah, but those associations, those affinities with the two types of websites, those were predetermined. So in the past, the system decided which ads would resonate with one website and which ads would resonate in the second website. And because of that, there's no real time selection. But what the board was not able to get to because of its construction is the reality that there is real time selection. It's the selection of the ad that was previously determined to resonate with that website because the user landed on that website, which was an action of the user. And I have nothing further. Thank you. Thank you, counsel. Thank you to both counsel, cases submitted.